**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Carla Theiss,                                                    Case No. 3:12CV2294

        Plaintiff,

        v.                                                              **ORDER**

Walgreen Co.,

        Defendant.

This is a dispute over defendant Walgreen Co.'s (Walgreen) alleged violation of O.R.C. § 4112.02. Plaintiff Carla Theiss brings this action under § 4112.02 claiming sexual harassment, hostile work environment, and sex discrimination and retaliation.[1]

Jurisdiction is proper under 28 U.S.C. § 1332. Pending is Walgreen's motion for summary judgment (Doc. 29). For the reasons that follow, I grant the motion.

**Background**

---

[1] Theiss also brought interference and retaliation claims under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654. In an order dated August 12, 2014, I granted Walgreen's motion for summary judgment as to the FMLA claims. *Theiss v. Walgreen Co.*, 2014 WL 3908118, *1 (N.D. Ohio) (Doc. 63). I also declined to exercise supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367, and dismissed them without prejudice. *Id.*

Theiss and Walgreen both appealed to the Sixth Circuit Court of Appeals. (Doc. 65). The court agreed with my finding that there was no interference or retaliation under the FMLA in this case. *See Theiss v. Walgreen Co.*, 2015 WL 7979519, *3 (6th Cir.).

The court properly disagreed, however, with my dismissal, as a matter of discretion, of plaintiff's state-law claims. *Id.* at *4. I had overlooked the fact that the parties are diverse, so that my jurisdiction is original, rather than supplemental. The Sixth Circuit remanded those claims for me to determine whether they meet the criteria of 28 U.S.C. § 1332. *Id.* They do, and I address them on their merits.

Theiss began working at Walgreen's Distribution Center in Perrysburg, Ohio in 2005. She first worked in the Full Case Department. In 2007, she transferred to the Shipping Department, where she was working as a loader at the time of her employment termination.

Theiss alleges that Rob Heikkila, her direct supervisor, showed favoritism towards other employees by glossing over delays on those employees' shipping lines and by assigning Theiss a heavier work load.

Theiss also alleges a hostile work environment. Specifically, she references a "crotch chop" incident in June 2009, when Michelle Morris, a coworker, directed "an inappropriate sexual innuendo [toward her] by placing her hands near her vaginal area while making a chopping motion." (Doc. 1-1, at 7). Theiss reported the conduct to one of the Distribution Center managers and Walgreen investigated the grievance. Heikkila and Jeff Dykhuis, a Human Resources Generalist, coached Morris for unprofessional behavior.

In August 2009, the HR Department asked Theiss if she was having any more issues with Morris. Theiss said she was not. Theiss alleges that later in the year, other coworkers informed her that employees were doing crotch chops behind her back. She said that she did not report it to HR or Heikkila because the employees doing the crotch chops were Heikkila's favorites and she would get in trouble for reporting them.

In June 2009, Theiss reported graffiti on the interior of a shipping trailer to Heikkila and HR. The graffiti said, "What's more evil than the devil? Carla." Though Walgreen photographed the writing, reviewed handwriting samples, and obtained the staging of the trailer, it could not determine who wrote the message. Theiss notes no one received discipline for the incident and Heikkila did not make any mention of the writing during the daily employee meetings. Walgreen also told Theiss

2

that there were others named Carla in the Distribution Center. According to Theiss, during that time period, there was only one other employee named Carla and she was working in a different area.

On December 28, 2010, Heikkila and Lisa Obbish, the Human Resources Director, issued a disciplinary report to Theiss for disruptive behavior in the workplace. HR stated that it had received complaints from other employees about Theiss shouting "HOE, HOE, HOE" at another employee whenever Theiss passed her. Theiss alleges she was merely singing along with the Christmas carols playing over the loudspeakers – something other employees did as well – and that this disciplinary report was another indication of Heikkila's favoritism toward other employees.

On March 3, 2011, Theiss filed an incident report with HR stating Aaron Todd, a coworker, had physically assaulted her. Theiss reported Todd had bumped her with his left shoulder as she passed him in his work area. She also filed a report with the Perrysburg Township Police about the incident.

Walgreen put Theiss on paid leave while it investigated the incident. It took witness statements and reviewed the film of the incident from the Distribution Center's security cameras. Walgreen determined through its investigation that Theiss's report was false. Following its investigation, the police came to the same conclusion.

On March 15, 2011, Walgreen terminated Theiss's employment as a result of the false incident report.

Theiss filed for and received unemployment benefits. She also filed discrimination charges against Walgreen with the Equal Employment Opportunity Commission (EEOC). On September 22, 2011, the EEOC issued a no probable cause finding and closed the case.

Theiss then filed suit in the Wood County, Ohio Common Pleas Court. Walgreen timely

removed the action to this court.

**Standard of Review**

Summary judgment is appropriate under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, 477 U.S. at 324.

I accept the non-movant's evidence as true and construe all evidence in its favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

**Discussion**

As noted above, Theiss has filed state law claims for: 1) sex discrimination/retaliation; and 2) sexual harassment/hostile work environment. I address each in turn.

**1. Sex Discrimination/Retaliation**

Plaintiff brings a sex discrimination/retaliation claim under O.R.C. § 4122.02(A), which provides that it is an unlawful discriminatory practice:

> For any employer, because of the sex . . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Ohio courts look to federal case law to decide § 4122.02 discrimination/retaliation claims.

*See Petersom v. Buckeye Steel Casings*, 133 Ohio App. 3d 715, 727 (Ohio Ct. App. 1999).

When a plaintiff lacks direct evidence, he or she may establish retaliation through circumstantial evidence using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See McConaughy v. Boswell Oil Co.*, 126 Ohio App. 3d 820, 827 (Ohio Ct. App. 1998). Under the *McDonnell Douglas* framework, a plaintiff bears the initial burden of establishing a prima facie case of discrimination/retaliation. *St Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Texas Dept. of Cmty Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

To establish a prima facie case for sex discrimination or retaliatory discharge, Theiss must demonstrate: 1) she engaged in protected activity; 2) Walgreen knew of her engagement in the activity; 3) she suffered an adverse employment action; and 4) there was a causal link between the protected activity and the adverse action. *See Shepard v. Griffin Servs., Inc.*, 2002 WL 940110, *7 (Ohio Ct. App.).

A reasonable jury certainly could find Theiss: 1) engaged in a protected activity by complaining about the crotch chop; 2) Walgreen knew of her complaint; and 3) she later lost her job. *See id.* at *7.

Whether Theiss satisfies the fourth "causal link" prong of the analysis is less certain. The time gap between her complaint and her termination – nearly two years – calls into question whether the two events were connected at all. *See Myers v. Goodrich Corp.*, 2011 WL 2568081, *4 (Ohio Ct. App.) ("Close temporal proximity between the employer's knowledge of the protected activity and the adverse employment action alone may be significant enough to constitute evidence of a causal connection - but only if the adverse employment action occurs 'very close' in time after an employee learns of a protected activity."). I accept, however, *arguendo* for purposes of this

5

opinion, that a jury could find the requisite temporal relationship between her complaint and her termination to establish a causal link.[2]

In any event, assuming Theiss could meet her initial burden, the burden would then shift to Walgreen to give a legitimate, non-discriminatory reason for its action. *Shepard*, 2002 WL 940110, at *7. If Walgreen gave a nondiscriminatory reason, Theiss would then need to show that the articulated reason was pretext for discrimination. *See id.*

The principal issue here is pretext. Theiss agrees that Walgreen has articulated a nondiscriminatory reason for firing her. She claims that, under all the circumstances, a jury could find that it did not have a good faith, honest belief in its stated basis for doing so. I disagree.

Walgreen terminated Theiss because it believed she falsified her report of Todd's assault. In making its decision, Walgreen supervisors reviewed security camera footage, took witness statements, including Theiss's, and conferred with the Perrysburg police. Theiss argues that the video camera footage is unclear and the hostility of Theiss's coworkers and supervisors towards her taints any statements against her.

Having reviewed the camera footage, I agree with Theiss that the video quality is less than ideal. Nonetheless, it was reasonable for Walgreen to have concluded that the footage showed that Todd did not assault Theiss. Walgreen did not limit its investigation to looking at a fuzzy video. It interviewed multiple witnesses who affirmed Todd's innocence. Moreover, Heikkila, the supervisor who allegedly treated Theiss less favorably than other employees under his supervision, was not

---

[2] But for my conclusion that the undisputed material facts would compel a jury to find that Walgreen's stated reasons were not pretextual, *see infra*, my consideration of whether Theiss, in fact, could make out a prima facie case would be more rigorous, and, in all likelihood, come to a different conclusion.

responsible for the termination decision.

The alleged animus of some witnesses does not affect Walgreen's honest belief, especially supported as it was by the video, that Theiss fabricated her report about the physical encounter with Todd. Walgreen, not this court – which does not retry the merits of disputes leading to an adverse action – was best able to determine the veracity of the participants and witnesses.

"The key inquiry" *vis-a-vis* the honest belief defense, "is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). Here, a rational jury could only conclude that Walgreen met its burden of showing its honest belief that Theiss made a false intra-company and police report about a coworker's alleged criminal conduct. Its investigation was prompt and thorough. Both the surveillance camera video and the police's own investigation support Walgreen's conclusion – and its honest belief in its determination.

Therefore, I find that Walgreen did not discriminate or retaliate against Theiss. Instead, it fired her for good, ample, and well-established cause.

## 2. Sexual Harassment/Hostile Work Environment

Theiss brings her claim for sexual harassment due to hostile work environment also under § 4112.02.[3]  To prevail, she must show:

> 1) that the harassment was unwelcome, 2) that the harassment was based on sex, 3) that the harassing conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and 4) that either a) the harassment was committed by a supervisor, or b) the employer, through its agents or supervisory

---

[3] Sexual harassment claims under § 4112.02 are subject to the same standards applicable to federal harassment claims brought under Title VII. *See Little Forest Med. Ctr. v. Ohio Civil Rights Comm'n*, 61 Ohio St. 3d 607, 609 (1991).

>personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

*Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St. 3d 169, 175 (2000) (quoting O.R.C. § 4112.02(A).

As to the third prong, severe or pervasive conduct, the harassing conduct must be more than merely offensive; the conduct must be severe and pervasive enough that the victim subjectively regards the work environment as abusive and that a reasonable person would also find the environment abusive. *Kilgore v. Ethicon Endo-Surgery, Inc.*, 172 Ohio App. 3d 387, 394-95 (citing *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986)).

When determining whether the conduct is actionable, I must examine the totality of the circumstances, including: 1) the frequency of the conduct; 2) the severity of the conduct; 3) the threatening or humiliating nature of the conduct; and 4) whether the conduct unreasonably interferes with the plaintiff's work performance. *See id.* at 395 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)). Theiss must show that the conduct made it more difficult to perform the job. *See Bucher v. Sibcy Cline, Inc.*, 137 Ohio App.3d 230, 245, (Ohio Ct. App. 2000).

I find Theiss's evidence is simply insufficient to sustain her burden of proof of showing that gender-based hostility was pervasive at Walgreen. She only had first-hand knowledge of one crotch chop; what others may have done without her knowledge could not have created a hostile environment.

Even if she had first hand, direct knowledge about the alleged conduct of others, her failure to report it to the company so it could take corrective action (as it did in the one incident she observed) is fatal to her claim. To prevail, she must show not just that a gender-based hostile work environment existed, but that the company, after being put on notice of such circumstance, failed

8

to remedy the situation. *See McGraw v. Pilot Travel Ctrs.*, 2012 WL 912739, *6 (Ohio Ct. App.). A company cannot be required to fix something that it does not know is broken.

Theiss's sexual harassment/hostile work environment claim therefore also fails.

## Conclusion

Because there is no genuine issue of material fact as to whether Walgreen violated O.R.C. § 4112.02, summary judgment is warranted.

It is, therefore

ORDERED THAT Walgreen's motion for summary judgment (Doc. 29) as to Theiss's state-law claims be, and the same hereby is, granted.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge